## ALONZO LELAND, APPELLANT, *v*. CHARLES ISEN-BECK AND GODFREY GAMBLE, RESPONDENTS.

SHERIFF'S SALE—SHERIFF'S DEED.—In order to uphold a sheriff's deed, it must appear that a valid judgment was obtained against the party whose property is sought to be conveyed by it, and that the property was sold upon an execution issued upon such judgment.

JUDGMENT.—A judgment which is void *ab initio*, may be attacked, collaterally, without appealing therefrom to this court.

QUITCLAIM DEED—NOTICE.—A purchaser of real estate who takes a quitclaim deed from his grantor, is presumed to have notice of any defects in his grantor's title; and he purchases at his own risk.

EVIDENCE—ERROR.—It is not error for the court below to admit improper evidence, such as a sheriff's deed, without first showing a valid judgment, unless objection be made to its introduction.

INSTRUCTIONS.—A purchaser of real estate taking a quitclaim deed therefor, not being a *bona fide* purchaser without notice, it was erroneous for the court, by its instructions, to leave that question to be decided by the jury, from the evidence.

ESTOPPEL—INSTRUCTIONS—PLEADING.—A party to an action can not avail himself of the benefits of an estoppel, unless he plead it. It is error for the court to submit such question to the jury by instruction, unless it be pleaded.

INSTRUCTIONS.—It is error for a court, in its instructions to a jury, to assume that material disputed facts have been proven. It is for the jury to find the facts from the evidence.

ESTOPPEL.—In order to create an equitable estoppel, there must be an admission, act, or declaration intended to influence the conduct of another; and actually leading him into a line of conduct which would be prejudicial to his interests, unless the party estopped be cut off from the power of retraction.

APPEAL from the first judicial district, Idaho county.

*Curtis & Barbour*, for the appellant.

*A. E. Isham*, for the respondents.

HOLLISTER, J., delivered the opinion. WHITSON, J., concurred. NOGGLE, C. J., dissented.

This is an appeal from a judgment recovered by the de-

fendants against the appellant, in the district court of the county of Idaho, in which the appellant brought his suit for the recovery of the possession of certain premises described in his complaint, and which, he alleged, was unlawfully withheld from him by the defendants. On the trial the plaintiff showed title to the premises in controversy, and the defense relied upon was, that his title had been divested by a sale by the sheriff of said county of the property, to Alexander & Co., on an execution issued upon a judgment against the appellant, in their favor, and from whom the defendants derived their title. The defendant, Gamble, also pleaded an estoppel, which will be hereafter noticed.

For the sake of perspicuity we will proceed to consider the case, as to the defendants separately, for their defense in some respects rests on different grounds. Isenbeck's defense is made to depend entirely upon the question whether the title derived by Alexander & Co. under the sale on execution is good or not, and whether, if not good, he purchased in good faith, and without notice.

His answer denies the ownership of the premises by the plaintiff; denies that he (the defendant) holds possession unlawfully and willfully; denies that the issues and profits are as stated in the complaint; denies the plaintiff's damages, and that he is injured as he alleges.

The evidence shows a sale of the property of E. B. Johnson et al. to Alexander & Co., who were the plaintiffs in the execution, and the conveyance to them of the property by the sheriff by deed, and a conveyance from them by quitclaim to this defendant, but it fails to show any judgment to support the sale to Alexander & Co. It is unquestionable that such evidence does not show even a *prima facie* title in Alexander & Co. In order to uphold and give validity to a sheriff's deed, it must appear that a valid judgment was obtained against the party whose property is sought to be conveyed by it, and that the property was sold upon an execution issued upon such judgment. These prerequisite proofs must be produced before a *prima facie* title can be established under the deed.

It is urged, however, that he was a purchaser in good faith, and even if Alexander & Co.'s title was not good, he could be protected notwithstanding. In answer to this, it is claimed that the judgment of Alexander & Co. against the plaintiff was *ipso facto* void, and that neither they nor their grantees could take any title under it as against the defendant in execution.

That the judgment was void had been decided by this court at the January term, 1872. This was the judgment of this court as to the validity of that judgment, the effect of which was not that it was void only from the time the decision was made, but that it was void *ab initio*. As such it could have been attacked in any collateral proceeding without appealing the question to this court. We are not disposed to discuss the question as to the effect of a sale under a void judgment, upon the title of one who purchases in good faith from a party who takes his title directly from the sheriff. That point was not considered in the argument, nor is it necessary to the decision of the case. The defendant purchased with notice of the defects of Alexander & Co's. title, because he took his title by quitclaim deed. In such cases the law presumes that the purchaser had notice of the defects of his grantor's title, and that he purchased at his own risk. There was no error, however, in admitting the deeds in evidence, because no objection was made by the plaintiff to their introduction. But it is objected that the court erred in giving certain instructions at the request of the defendants. These instructions are as follows:

2. "The sheriff's deed to Alexander & Co. gave color of title, and the deed to Alexander & Co. conveying to Isenbeck gave color of title in Isenbeck; and if the jury believe from the evidence that Isenbeck went into possession of the property in good faith, believing such title to be good, and that he, or he and the defendant Gamble, expended large sums of money in developing the mines or in making valuable improvements thereon, with the knowledge of plaintiff, under such circumstances that plaintiff might have necessarily notified them of his claim to the property, and that

plaintiff did not give such notice, then it makes no difference whether the sheriff's deed was good or bad, the plaintiff is estopped from setting up or claiming any right or title whatever to the property."

"If the jury believe, from the evidence, that the plaintiff was here in Washington when the said Isenbeck and Alexander were, and that said Alexander & Co. were urging the payment of the purchase money from Isenbeck of said property, and that he represented that he did not intend to claim said property or litigate the title to the same, and that those representations came to the knowledge of Isenbeck, and that he, the said Isenbeck, confiding in such representations, paid such purchase money, then the plaintiff is estopped from setting up any title to, or claiming said property."

If plaintiff was here in Washington, when the said Alexander & Co. and Isenbeck both were, and knew that the said purchase money for said property or one thousand six hundred dollars thereof was not paid, and that Alexander & Co. were urging payment of the same, it was his duty to have notified Isenbeck of his, plaintiff's, claim to the property, and that if he did not do so, and if said Isenbeck was induced to pay said money by the plaintiff, and in ignorance of plaintiff's claim, then the plaintiff is estopped from claiming the property.

The second instruction was clearly erroneous, so far as Isenbeck was concerned, in this: The sheriff's deed to Alexander & Co., being unsupported by a valid judgment, was not even *prima facie* evidence of title in them; and further, it did not purport to convey the property of the plaintiff. It was only a conveyance of the property of E. B. Johnson and others. The deed from Alexander & Co. to Isenbeck, being only a quitclaim, conveyed no better nor higher title than was vested in them by the sheriff's deed. Isenbeck, deriving his title by such a conveyance from Alexander & Co., was not a *bona fide* purchaser without notice. The court should have so instructed the jury, instead of leaving the question of good faith to be determined by them from the proofs in the case. Isenbeck not having pleaded any

such matter as therein stated, nor indeed any other matters
of estoppel, could not avail himself of any such defense.
To have entitled him to the benefit of an estoppel, he would
have pleaded it, for it being a defense personal to himself,
if he did not set it up, he must be considered to have
waived it.

The fourth and fifth instructions, as they related solely to
the estoppel, are objectionable on the same grounds, and
for the further reason that had he pleaded it, the matter
therein stated would not have amounted to an estoppel.
Isenbeck had purchased the property before it was pre-
tended that the plaintiff made the representations alleged,
and was, therefore, under legal obligations to complete the
payment to Alexander & Co. No matter how strong the in-
ducements which the plaintiff's representations held out for
the payment of the money may have been, Isenbeck could
not, by pleading them, have been released from his liability
to Alexander & Co. It may be stated as another objection
to these two instructions, that they assume that Isenbeck
and Alexander & Co. were in Washington, and do not leave
this fact to be found by the jury, as they do the question
whether the plaintiff was or was not in the place.

This brings us to the consideration of the nature of
Gamble's defense, and of the proceedings of the court in
trying the case. Gamble was made one of the original
defendants in the suit, and put in his answer denying that
he was working the mine; the unlawful withholding of the
possession; and disclaiming any interest in the property.
Subsequently he filed what his counsel called, and what
was treated as, a supplemental answer, repeating substan-
tially what he pleaded in the first answer, except as to such
matters as were set up in twelve other pleas, which were
stricken out by order of the court.

Thereafter he obtained leave, and filed an amended sup-
plemental answer, in which he denied plaintiff's ownership
of the property in question, and of his right thereto;
denied the unlawful withholding; denied the issues and
profits of the mine; and alleged title in Alexander & Co.
under the sheriff's sale on execution, and title thereunder

in himself, by sundry mesne conveyances from them, the last being a deed executed by Isenbeck, and dated after the answer and the first supplemental answer were put in, and in addition, he sets up an estoppel. From this series of pleadings, extraordinary and irregular as they must appear to all, it will be seen from the amended supplemental answer, that all the matters averred therein are either redundant, irrelevant, or immaterial to his defense, and as such could be reached by a motion to strike out under our practice act. The redundant matters were such as had been pleaded in his first and original supplemental answer, and were therefore unnecessary. The estoppel could not be pleaded, for reasons elsewhere stated, and was therefore irrelevant.

The amended supplemental answer shows that by his own deraignment of title this defendant had traced it back to a source that was utterly worthless. The fountain head was only the sale of the property to Alexander & Co. by the sheriff, which was evidenced not by his deed, but by his certificate of the sale to them. Such a certificate shows neither a legal nor equitable title, for by it nothing passes to the purchaser, which would give him the right to enter into the possession of the property or to sell it; nor could any such right accrue until after the right of redemption had expired and a deed was executed by the sheriff. It was neither *prima facie* evidence of title nor color of title.

Having thus pleaded knowledge of such title, all the evidence of his claim to the property derived therefrom was immaterial, and could be reached in the same manner as the other portions of the same answer. On the coming in of this amended supplemental answer, the plaintiff entered his motion to strike it out, which motion was overruled by the court and the decision excepted to. The other alleged errors are founded upon the instructions at the instance of this defendant. They are four in number, three of which we have already considered; the other is numbered one, and is as follows:

"The deed of Isenbeck to defendant Gamble, of the twenty-third of February, 1872, received in evidence, put

Gamble in possession of all the rights of Isenbeck, both in the property and in this action, and Gamble may avail himself of every defense in this action that Isenbeck could have done if he had not so conveyed the title."

This instruction did not properly lay down the rule under the pleadings in the case; it goes to the extent, and this was the design of it, that Gamble could plead the same matters of estoppel that Isenbeck could have done if he had so chosen. Gamble was made one of the original defendants, as has been stated, and had put in his answer disclaiming any interest in the property in controversy, and having, as his amended supplemental answer and the evidence shows, purchased the property from Isenbeck, with full knowledge of the plaintiff's claim to it, and if his intention to assert his rights thereto, he could not set up by way of defense any such estoppel as Isenbeck could have pleaded. The doctrine that not only a party but his privies in estate may plead an estoppel, can have no application as to the privies when they could not have been influenced by inducements not held out to them nor operating to determine their conduct. Even if there had been inducements held out by the plaintiff which may have influenced the conduct of Isenbeck, still we can not see how they could affect the conduct of Gamble after the plaintiff had placed upon record his retraction of all that he had previously said or done, and this before Gamble had purchased the property.

In order to create an equitable estoppel, there must be an admission, act, or declaration intended to influence the conduct of another, and actually leading him into a line of conduct which would be prejudicial to his interests, unless the party estopped be cut off from the power of retraction.

The second instruction, so far as it relates to the question of good faith, is erroneous, for reasons already stated in considering the case as to Isenbeck. Gamble, like Isenbeck, took his title by a quitclaim deed, and accordingly with notice of the defects of Alexander & Co.'s title. It rested solely, therefore, upon the validity of their title, and if the judgment, execution, and sheriff's deed to them were nullities, no foundation for any subsequent title derived

therefrom can be upheld as valid. As we are satisfied no case can be made that will establish a valid defense should a new trial be ordered, we shall simply order a judgment of reversal, and that restitution of the property in question be awarded to the plaintiff.

The appellant has brought here a record containing a mass of redundant matter, and which greatly increases the costs in the case, and we therefore think that he should be required to pay half of the costs in the court.

It is therefore adjudged and determined, that the judgment of the court below be reversed, and a writ of restitution be awarded the plaintiff for the return of the property, and that each party pay one half the taxable costs of the proceedings in this court.