(No. 6866.   June 26, 1941.)

DAVID G. DOWD, GERTRUDE DOWD BARTLETT, JENNIE DOWD BENTHIN, CHARLES A. DOWD and GEORGE H. DOWD, Appellants, v. IDA LEONORE DOWD, Respondent.

[115 Pac. (2d) 409.]

REHEARING DENIED JULY 21, 1941.

O. A. Johannesen, Ralph L. Albaugh and W. K. Naylor, for Appellants.

Otto E. McCutcheon, for Respondent.

AILSHIE, J.—Respondent and David F. Dowd inter-married December 26, 1914. November 11, 1915, David F. Dowd made and executed his will, disposing of his entire estate, in words as follows:

## "LAST WILL AND TESTAMENT OF DAVID F. DOWD.

"Realizing the uncertainty in the length of life and desiring to make disposition of my property while in sound mind and body, I, David F. Dowd, hereby declare and publish this my last will and Testament.

1. I desire that my funeral expenses and debts, if any, be settled early as convenient after my death.

2. I will, devise, and bequeath to my wife Ida Leanore Dowd to have and to hold for her and her heirs and assigns forever all of my property of every kind and nature, both real and personal of which I may be possessed at the time of my death.

3. I will, devise and bequeath to my five children as follows: To D. G. Dowd, the sum of $25.00 in cash. To H. F. G. Dowd, the sum of $25.00 in cash. C. A. Dowd, the sum of $25.00 in cash. Jennie K. Dowd, the sum of $25.00 in cash and to Mrs. Mary Gertrude (Dowd) Bartlett, the sum of $25.00 cash.

4. I request that the said Ida Leanore Dowd be appointed executrix of this my last will and testament and that she may be permitted to serve without bond.

In Witness Whereof I have hereunto set my hand this

11th day of November A. D. 1915 in the presence of
witnesses called by me to witness the signing of my will.

David F. Dowd"

(Duly witnessed)

July 26, 1933, Dowd and wife entered into an agreement settling their property rights and thereafter and on the same date, a decree of divorce was entered, dissolving the bonds of matrimony existing between the parties and dividing and disposing of the property in accordance with their agreement, as follows:

"IT IS FURTHER ORDERED, adjudged and decreed that the following described property, situated in Bonneville County, Idaho, be, and the same is hereby declared to be the separate property and estate of the plaintiff, [Mrs. Dowd] to-wit:

Lots One and Two, Block One, of the Townsite of Milo, Idaho, and the West Half of the Northwest Quarter of Section Nine, Township 3 North, Range 39 East, Boise Meridian, containing 84 acres, more or less, according to Government Survey, together with 24 shares of stock in the Harrison Canal & Irrigation Company, representing 120 inches of water.

Also those certain store fixtures heretofore used by the plaintiff in her millinery business carried on at Idaho Falls, Idaho.

"IT IS ALSO FURTHER ORDERED, ADJUDGED AND DECREED that the following described property, situated in Bonneville County, State of Idaho, be, and the same is hereby, declared to be the sole and separate property and estate of the defendant [Mr. Dowd], to-wit:

Lots Four, Five and Six in Block 23 of Railroad Addition to the town of Idaho Falls, formerly Eagle Rock, as per the recorded plan and plat thereof.

Also that all mining property, claims, filings, etc. wherever situated in the State of Idaho, or elsewhere, standing of record in the name of the defendant, or in which the defendant has any interest, however such interest may be evidenced, and together with any and all personal property of every kind and description held by

the defendant, or by any person holding the same for him, is hereby declared to be the sole and separate property and the estate of the said defendant, and this court does hereby decree the same to be the sole and separate property and estate of said defendant, and that the plaintiff has no interest therein whatsoever, excepting.

That the plaintiff is the holder of a valid junior mortgage given to her by the defendant upon the property situated in said Block 23 in Railroad Addition to Idaho Falls, herein previously described, which mortgage is her sole and separate property."

November 3, 1933, the parties remarried. April 6, 1938, David F. Dowd died, leaving an estate consisting of real and personal property which was subsequently appraised at about $20,000. April 11, 1938, (the day following the funeral) Leanore Dowd (whom we will hereafter refer to as respondent) removed the will from the lock box at the bank and took it to a lawyer for advice, and was informed that it "was doubtful about the will" being in force and effect.

It is also conceded that all parties to the proceedings, that is, respondent and the appellants (five children of David F. Dowd by a former marriage), were notified of the existence of the will, although there is some dispute as to whether or not two of them were apprised, before the appointment of an administratrix, of the contents of the will. All parties to this action acted upon the theory that there was no will, or rather, that there had been a revocation of the will. In respondent's petition for letters of administration, she alleged, inter alia:

"That due search and inquiry have been made to ascertain if said deceased left any will and testament, but none has been found; and according to the best knowledge, information and belief of your petitioner, said deceased died intestate."

No opposition was made to the petition of respondent, for appointment as administratrix of the estate, and accordingly on April 26, 1938, an order was entered in the probate court, adjudging that David F. Dowd died intestate and that respondent was his widow and appointing

her as administratrix of the estate. April 30, 1938, an order of probate court was procured, allowing respondent a widow's maintenance of $150.00 per month and the use of residence apartments in the Dowd-Bucklin Building.

October 27, 1938, respondent filed a claim in the probate court against the estate of David F. Dowd, for the sum of $25,843.17, alleging in her claim that the deceased, at the time of his death, was indebted to her in that amount. This claim was disallowed by the probate court and thereafter respondent filed an action in the district court on the rejected claim and obtained a verdict and judgment against the estate in the sum of $12,380.28. Appellants herein appealed from that judgment to this court, where the judgment was affirmed. (*Dowd v. Dowd's Estate*, 62 Ida. 157, 108 Pac. (2d) 287.) A more detailed account of the proceedings in that action may be had by reference to the reported case, *supra*.

December 11, 1939, respondent filed her petition for probate of the will; and opposition to the probate and contest was filed by David G. Dowd, Gertrude Dowd Bartlett, Jennie Dowd Benthin, George H. Dowd and Chas. A. Dowd (appellants herein), children of the decedent by former marriage. The hearing was held by the probate court January 12, 1940, and thereafter an order was entered denying the probate of the "purported and pretended last will and testament of the said David F. Dowd." An appeal was thereupon taken to the district court where trial anew was had and the court entered an order reversing the probate court and directing the admission of the will to probate. This appeal is from the latter judgment.

Appellants assign numerous errors which, upon the whole, reduce themselves to about four propositions:

(1) That the respondent, by seeking and procuring appointment as administratrix and neglecting to present the will, made an election, by which she is bound;

(2) That the order, appointing respondent administratrix and adjudging that decedent died intestate, became *res adjudicata* as to respondent;

(3) That respondent is now estopped from asserting that decedent left a last will and testament, and

(4)  That the will was revoked by the property settlement made between respondent and David F. Dowd and the decree of court approving the settlement, the decree of divorce and remarriage.

On the question of estoppel, we are confronted with substantially the following conditions and circumstances: Respondent was aware of the existence of the will prior to petitioning the probate court for her appointment as administratrix. She thereafter filed a petition signed by herself (not by attorney), alleging that the decedent died intestate (see quotation, *supra*). No opposition was made to her appointment. After her creditor's claim against the estate was rejected, she commenced an action in the district court for a judgment, in which she alleged, inter alia:

"That due search and inquiry was made for the purpose of ascertaining whether the said David F. Dowd left a will or other testamentary document, but no will was found, and except for a certain writing hereinafter referred to, ["the blue paper," referred to in *Dowd v. Dowd, supra,* at p. 290] no testamentary document was found, and plaintiff therefore alleges that the said David F. Dowd died intestate."

This complaint was signed by her attorney and verified by her oath, February 23, 1939.

Appellants contested this claim in the district court and succeeded in reducing it from the amount demanded to the sum of $12,380.28. It is fair to presume that this opposition, on the part of appellants, was inspired by the belief that they would share, under the state law of succession, in inheriting a share of any estate that might be left after payment of debts and costs of administration. Had the will been presented and admitted to probate, it would have made practically no difference to them how large or how much her claim was allowed for. In other words, under the will, they were to receive bequests of only $25.00 each. On the other hand, it was of very substantial importance to the respondent to have her full claim allowed, in order that she might receive the entire amount thereof or at least pro-rate with other creditors, in the event the estate should prove insolvent. When it

turned out, in the course of the litigation and administration, that there would likely be some residue after payment of the debts and expenses of administration, it then became of more consequence to respondent to have the will admitted to probate.

It is argued, on behalf of respondent, that her action has not caused appellants to change their position or suffer any financial loss; and that they are only out their expenses of litigation, which the court has ordered repaid them. This can not be fairly set down as the only loss or prejudice suffered by them. There is, in it all, a measure of mental disquietude and family disturbance and discord which can not be restored by award of damages. Moreover, two of appellants (daughters of decedent by a former marriage) no doubt recall their own mother, with the thought, common in such cases, that she may have contributed to the accumulation of a part of this estate, which is to be taken by another if this will be now admitted to probate. Had the estate been administered under the inheritance statutes, the alleged testamentary disposition would not have been present to excite these unhappy reflections, which have now, by this belated proposal to probate the alleged will, been rekindled and fanned into accusation and recrimination.

There is also a point of public policy and justice involved in the legal course respondent has pursued: The probate court has been misled and deceived by the repeated assertions of respondent that her late husband "died intestate" and did not leave "any will and testament." That court was entitled to know whether a will had been left by decedent. Sec. 15-201, I. C. A., requires every custodian of a will to produce it *within thirty days* after receipt of information of the death of the maker thereof, and to deliver the same to the probate court or to the executor named therein. This section declares "A public policy involved in the establishment of every legally executed last will." (*Tator v. Valden,* (Conn.) 198 Atl. 169, 171.)

"It is also the duty of the executor in a will, to present it for probate and endeavor to procure its admission."

(*In re Avery's Appeal,* 117 Conn. 201, 203, 167 Atl. 544, 545; 88 A. L. R. 1154.)

It may be said that, since the executrix already had possession of the will, there has been no violation of the statute. Technically, that may be true. But, since the executrix is the only substantial beneficiary under this will, she is the only one who could have been materially interested in presenting the will for probate,—no one else has asked that it be admitted to probate, and no one else could profit from its probate.

These arguments, suppositions and illustrations are predicated on the assumption that the will was still in force and effect and could have been probated (as held by the district court). If, however, it was revoked and no longer in effect (as held by the probate court), then respondent pursued the right course in the first place, by taking the position the will was void. Under these conditions and circumstances, it seems eminently just, fair and equitable, to not allow her now to repudiate the course she pursued with this estate for a period of one year and eight months, during which time she had this alleged will *in her possession,* was carrying on litigation and administering the estate. If she had any thought this was a valid will and wanted to assert her right under it, instead of under the law of succession, she should have submitted the document to the probate court for its decision and judgment; and if it had been admitted to probate, there would have been no reason for litigation between her and these other heirs, over her creditors' claim, since she was to have the entire estate (less $25 to each of appellants) under the will.

This is a case wherein a poet's sense of equity seems very appropriate, when he says:

"He that will not when he may,
He shall not when he will."

(Robert Mannyng, Handlyng Synne, 1. 47, 99.)

Respondent, having inspired appellants with the confidence, that their father's estate would, after payment of debts and expenses, be distributed under the law of succession, may not, after twenty months' administration and litigation over claims, now assert the contrary of

what she induced the court to believe throughout the whole course of administration and litigation. Respondent should not now, under all these facts and circumstances, be heard to assert that decedent left a will and that she had been in possession of it, all the while withholding it from the court.

Estoppel as been applied in cases of destroyed wills. Page on Wills, (Vol. 1, 2d ed.) sec. 637, p. 1062, says:

"If the will was destroyed fraudulently during testator's lifetime, one who was a party to such fraudulent destruction can not propound such destroyed will for probate.

"It is said that one who has destroyed a will is estopped to resist probate thereof."

If one, who has destroyed a will, is *estopped to thereafter resist probate* thereof, it is difficult to see how one who deliberately withholds or conceals a will may thereafter be allowed to urge its probate.

The conclusion we have reached on the question of estoppel will render it unnecessary to consider any of the other questions presented.

Judgment reversed, with direction to trial court to affirm the order of the probate court denying probate of will. Costs awarded to appellants to be paid out of estate as an expense of administration.

Morgan and Holden, JJ., concur.

GIVENS, J. (Dissenting)—As stated by Ailshie, J., respondent removed the will from testator's lock box at the bank and took it to a lawyer who told her it " 'was doubtful about the will' being in force and effect," and "It is also conceded that all parties to the proceedings, that is, respondent and the appellants, (five children of David F. Dowd by a former marriage), were notified of the existence of the will, although there is some dispute as to whether or not two of them were apprised, before the appointment of an administratrix, of the contents of the will. All parties to this action acted upon the theory that there was no will, or rather, that there had been a revocation of the will."

E. A. OWEN, Lawyer:

"Q. Do you recall about mid-April, in Nineteen, Thirty-eight, of having some business for Mrs. Dowd in connection with the prospective probate of her deceased husband's estate?

A. I do.

Q. At that time—about that time, did you see David G. Dowd, Gertrude Dowd Bartlett, Jennie Dowd Benthin, Charles A. Dowd and George H. Dowd, or any of them?

A. Yes, I did.

Q. Which ones did you see?

A. I saw Dave, and Charles, and George, and Mrs. Benthin. Is that the name?

Q. Yes.

A. Not Mrs. Bartlett.

Q. Not Mrs. Bartlett.

A. No.

Q. Now, at that time had the petition for letters of administration been filed in the Probate Court of this County, on the estate of David F. Dowd, deceased?

A. No, it had not been filed.

* * * * * * *

Q. With relation to the date the petition for letters of administration was filed, what was the time, if at all, that the three Dowd men and Mrs. Benthin were informed of the existence of a purported will?

A. Two or three days before the petition was filed.

Q. And the petition was filed in April, Nineteen, thirty-eight?

A. That's true.

Q. Could you say whether they, or either of them, read the document?

A. I think not.

Q. You think not?

A. Yes.

Q. Can you say whether or not you informed them, or either of them, of the contents of the purported will?

A. I did.

Q. You did?

A. In fact, they knew the contents.

Q. Through communication from you or from some other source?

A. I don't know.

Q. They knew about it?

A. Yes.

Q. And you talked with them about it?

A. Yes.

MRS. IDA LEONORE DOWD, petitioner-respondent:

"Q. At that time your previous testimony indicated that the day after Mr. Dowd's funeral you took the purported will to Mr. Owen?

A. Yes sir; on the eleventh.

Q. The eleventh of April, Nineteen, thirty-eight?

A. Yes.

Q. And what did you request him to do?

A. I requested him to explain to Mr. Dowd's children about the will, and he told me that he would do so, and to read it to them.

Q. You refer to the other heirs?

A. Yes, the other heirs.

Q. And issue of David F. Dowd, deceased?

A. Yes.

Q. And subsequently, what information did you get from Mr. Owen as to what he had done with the will?

A. Well, he told me that he would look the will over, and study it, but that he thought it was revoked.

Q. But was any information conveyed to the five heirs?

A. He told me that he explained it to them, and read the will to them."

DAVID G. DOWD, contestant-appellant:

"Q. Mr. Dowd, you and some of your brothers and sisters called on Mr. Owen sometime about the eleventh day of April, Nineteen hundred and thirty-eight?

A. Yes sir.

Q. And did you go there at the request of Mrs. Dowd?

A. Yes.

Q. And did Mr. Owen tell you anything about the will?

A. Yes, he did.

Q. Did he show you the will?

A. No, he didn't; I don't think he did; he just said he had the will. He might have had it on his desk, but I don't remember him showing it to us.

Q. Did he tell you the contents of the will?

A. Not a thing.

Q. And did you at that time know the contents of the will?

A. Never did.

Q. Did you know anything about the will on the thirteenth day of April, Nineteen, thirty-eight.

A. Yes; I knew there was a will.

Q. But did you know anything about the contents on that day?

A. No sir; none whatever.

Q. Did you know anything about the contents of the will until sometime after the commencement of the proceedings?

A. No."

Equitable estoppel or estoppel in pais are applied to a situation where one who is excusably ignorant of the true facts has relied upon false representations of one who knew the truth, to his substantial prejudice or injury. (19 Am. Jur. 634, sec. 34; 21 C. J. 1119, sec. 122; *Williams v. Neeley,* 134 Fed. 1, 11, 69 L. R. A. 232; *W. S. Gray Cotton Mills v. Spartanburg County Mills,* (S. C.) 137 S. E. 684; *James v. Nelson,* 90 Fed. (2d) 910, 917; *Dallas Building & L. Ass'n v. Patterson,* (Tex.) 48 S. W. (2d) 657; *New York Life Ins. Co. v. Rees,* 19 Fed. (2d) 781, 784; *In re Sarvey's Estate,* (Ia.) 219 N. W. 318; *Bank of America of California v. Pacific Ready-Cut Homes,* (Cal.) 10 Pac. (2d) 478, 481; *Reid's Admin'r v. Benge,* (Ky.) 66 S. W. 997, 998.)

Thus, in order to create an estoppel in pais the party pleading it must have been ignorant of the facts constituting the estoppel, and where, as in the case at bar, all parties are equally aware of the true facts there can be no estoppel. (*Cahoon v. Segar,* 31 Ida. 101; *Johansen v. Looney,* 31 Ida. 754; *Page v. Savage,* 42 Ida. 458, 475; *In re Davis' Estate,* (Cal.) 101 Pac. (2d) 761, 102 Pac. (2d) 545; *Idaho Farms Co. v. North Side Canal Co.,* 24 Fed. Supp. 189, 107 Fed. (2d) 382, 82 A. L. R. 297;

*O'Neal v. Turner,* (Ala.) 158 So. 801; *Toms v. Hellman,* (Cal.) 1 Pac. (2d) 31; *General Motors Accpt. Corp. v. Gandy,* (Cal.) 253 Pac. 137; *Myers v. Burke,* (Conn.) 179 Atl. 88; *Rosser v. Texas Co.,* (Okla.) 48 Pac. (2d) 327; *Makiesky v. National Guardian Life Ins. Co.,* (Minn.) 219 N. W. 864; 21 C. J. 1123, sec. 126.) Since appellants made no attempt to have the will probated or to compel respondent to produce it, it is probable, as stated by the trial judge, that they knew its terms and provisions, and there is ample evidence to support that view. Whether they actually knew the terms of the will or not there was absolutely no barrier to their finding out (I. C. A., secs. 15-202, 15-204 and 15-206) and under the long standing pronouncements of this court, *supra,* and indeed the universal rule everywhere, that fact alone is sufficient to defeat an estoppel herein. Appellants were in exactly the same position as respondent; they had all the knowledge she had and likewise every right (or duty) to have the will probated. Instead they chose to let the will lie dormant, (no doubt intentionally so, since it was to their interest to not take under the will) realizing full well that any heir or interested party might produce it for probate at any time, but hoping that such would not be done.

A second essential element of estoppel is totally lacking herein. That is the element of substantial prejudice resulting from a reliance on respondent's misrepresentations, if there were any misrepresentations on her part. (*Coeur d'Alene v. Spokane etc. R. Co.,* 31 Ida. 161, 166; *Sunshine Mining Co. v. Terinies,* 19 Fed. Supp. 587, 99 Fed. (2d) 651, 60 S. Ct. 44, 308 U. S. 66, 84 L. Ed. 85; *Pace v. Pace,* (Miss.) 65 So. 273; *Matheson v. Matheson,* (Ia.) 117 N. W. 755; *Barnhardt v. Morrison,* (N. C.) 101 S. E. 218; *Bridges v. Agee,* (Tenn.) 69 S. W. (2d) 891; *Illinois Cent. R. Co. v. Ward,* 35 S. W. (2d) 863, 868; *Wilmington Furniture Co. v. Cole,* 178 S. E. 579, 207; *Howe v. Sioux County,* (Ia.) 163 N. W. 411; *Vinton v. Atlas Assur. Co.,* 178 Atl. 909, 912; *Makiesky v. National Guardian Life Ins. Co., supra; Frohman v. Madden,* 13 Ida. 138, 88 Pac. 894; *Eastwood v. Standard Min. etc. Co.,* 11 Ida. 195; *Leland v. Isenbeck,* 1 Ida. 469.)

The injury or prejudice resulting must be substantial and actual, not merely technical, formal or supposititious surmises. (*Ashwander v. Tennessee Valley Authority,* 97 U. S. 288, 80 L. Ed. 688; 19 Am. Jur. 735, sec. 85.)

Respondent's share of the estate was considerably more under the will than under intestate disposition, thus she stood to lose by not probating the will and the law does not permit appellants an unjust gain because of her innocent mistake of law. (21 C. J. 1125, sec. 128; 19 Am. Jur. 794, sec. 141.)

A delay in probating a will brought about by executor's mistake as to its validity has been held not sufficient ground for an estoppel. (*Peter v. Peter,* (Ill.) 175 N. E. 864. See also, *First National Bank v. Witherspoon Livestock Commission,* (Mo.) 90 S. W. (2d) 453; *Succession of Gilmore,* (La.) 102 So. 94), and the annotation in 50 A. L. R. 912, where the rule is stated thus:

" 'It is not intended to say that the plea of ignorantia juris would in all instances be available in civil cases, ... because some legal propositions are so plain and familiar, even to ordinary minds, that it would be doing violence to probability to impute ignorance in such cases; but it is only meant to say that where the legal principle is confessedly doubtful, and one about which ignorance may well be supposed to exist, a person acting under a misapprehension of the law in such a case shall not forfeit any of his legal rights by reason of such mistake.' Quoting from *Lammot v. Bowley,* (Ind.) 6 Harr. & J. 500."

Equitable estoppel is predicated on a change of position whereby the person claiming the estoppel has been deprived of some substantial legal right. (*Kentucky Home L. Ins. Co. v. Kittinger,* (Ky.) 90 S. W. (2d) 673, 103 A. L. R. 1361; *Ashenwander v. Tennessee Valley Authority, supra.*) Appellants possess every legal right in regard to contest of the will they would have had if it had been probated at once; they have given up nothing and their position is equally as good now as at any time, legally and otherwise.

In this connection it is well to remember that estoppel is an equitable doctrine to prevent unjust enrichment—it is a shield and not a sword (*Adler v. Pin,* 80 Ala. 351;

*Daniels v. Tearney,* (W. Va.) 102 U. S. 415, 26 L. Ed. 187; *Idlewild Farm Co. v. Elkhorn River Drainage Dist.,* (Neb.) 206 N. W. 741, 744; *Reese v. Spence,* (Ga.) 4 S. E. (2d) 244, 247) and appellants must not be permitted to use it to gain a share in an estate to which they are not otherwise entitled.

After all, the only injury asserted by appellants themselves is that they expended some time and money in contesting respondent's creditor's claim against the estate which they now assert they would not have expended had they known she intended to probate the will. This injury has now been rectified by the offer of respondent to repay all such loss.

The only other injuries conceived herein (and those not by the parties involved) are "a measure of mental disquietude and family disturbance and discord" and the possibility that appellants, or some of them, might "recall their own mother, with the thought, common in such cases, that she may have contributed to the accumulation of a part of this estate which is to be taken by another"; results which would, of course, have been just as true had the will been probated without delay. To use equitable estoppel to prevent the probate of the will under these facts is indeed, in the words of Shakespeare, to "devise strange deaths for small offences done." (2 Henry VI, Act III, Scene 1.)

Since no estoppel is present the other points must be decided.

The law is well settled that a restrictive statute such as sec. 14-307, I. C. A., abrogates implied or other than enumerated revocations. (*Hunter v. Baker,* (Md.) 141 Atl. 368; *In re McGill's Will,* (N. Y.) 128 N. E. 194; *Aschenbeck v. Aschenbeck,* (Tex.) 62 S. W. (2d) 326; *In re Finkler's Estate,* (Cal.) 21 Pac. (2d) 681, 687; *Freeman v. Hart,* (Colo.) 158 Pac. 305; *In re Appenfelder's Estate,* (Cal.) 278 Pac. 473; *Noesen v. Erkenswick,* (Ill.) 131 N. E. 622.)

A divorce is not a statutory cause of revocation and under the above rule not cognizable as an implied ground of revocation. (*In re Patterson's Estate,* (Cal.) 222 Pac. 374; *In re Brannon's Estate,* (Cal.) 295 Pac. 83; *Pacetti*

*v. Rowlinski,* (Ga.) 150 S. E. 910; *Card v. Alexander,* (Conn.) 48 Am. Rep. 187; *In re Jones' Estate,* 60 Atl. 915, 69 L. R. A. 940, 107 Am. St. Rep. 581; *Hunter v. Baker, supra; Sanders v. Simoich,* 2 Pac. 741, 743.)

A property settlement, unless inconsistent with or plainly setting aside or annulling a previously executed will, does not operate as a revocation. (I. C. A., sec. 14-317; *In re Nenaber's Estate,* (S. D.) 225 N. W. 719; *Robertson v. Jones,* (Mo.) 136 S. W. (2d) 278; *In re Brannon's Estate, supra; In re Crane's Estate,* (Cal.) 57 Pac. (2d) 476, 104 A. L. R. 1101; *In re Swords' Executrix,* 199 N. Y. S. 673, affirmed in 204 N. Y. S. 952; *In re Brown's Estate,* 117 N. W. 260; 26 Cal. Jur. 1026, sec. 307.)

The property settlement herein[1] (part of contestant's

---

[1] The property settlement in the divorce decree states:

"IT IS FURTHER ORDERED, adjudged and decreed that the following described property, situated in Bonneville County, Idaho, be, and the same is hereby declared to be the separate property and estate of the plaintiff, to-wit:

Lots One and Two, Block One, of the Townsite of Milo, Idaho, and the West Half of the Northwest quarter of Section Nine, Township 3 North, Range 39 East, Boise Meridian, containing 84 acres, more or less, according to Government Survey, together with 24 shares of stock in the Harrison Canal & Irrigation Company, representing 120 inches of water.

Also those certain store fixtures heretofore used by the plaintiff in her millinery business carried on at Idaho Falls, Idaho.

IT IS ALSO FURTHER ORDERED, ADJUDGED AND DECREED that the following described property, situated in Bonneville County, State of Idaho, be, and the same is hereby, declared to be the sole and separate property and estate of the defendant, to wit:

Lots Four, Five and Six in Block 23 of Railroad Addition to the town of Idaho Falls, formerly Eagle Rock, as per the recorded plan and plat thereof.

Also that all mining property, claims, filings, etc. wherever situated in the State of Idaho, or elsewhere, standing of record in the name of the defendant, or in which the defendant has any interest, however such interest may be evidenced, and together with any and all personal property of every kind and description held by the defendant, or by any person holding the same for him, is hereby declared to be the sole and separate property and the estate of the

Exhibit 3) is not inconsistent with the will,[2] hence was not a revocation. (*In re Brown's Estate, supra; In re Nenaber's Estate, supra; Robertson v. Jones, supra; In re Crounse's Will,* 6 N. Y. S. (2d) 32; *In re Brannon's Estate, supra.*)

The remarriage was not a revocation because, first, not so specified in the statute, and second, the will makes provision for the wife. (I. C. A., sec. 14-312; *In re Brannon's*

said defendant, and this court does hereby decree the same to be the sole and separate property and estate of said defendant, and that the plaintiff has no interest therein whatsoever, excepting

That the plaintiff is the holder of a valid junior mortgage given to her by the defendant upon the property situated in said Block 23 in Railroad Addition to Idaho Falls, herein previously described, which mortgage is her sole and separate property.

Dated as of the 23rd day of June, 1933.

(Signed) C. J. Taylor
DISTRICT JUDGE."

[2] The will herein is as follows:

"Realizing the uncertainty in the length of life and desiring to make disposition of my property while in sound mind and body, I, David F. Dowd, hereby declare and publish this my last will and Testament.

1. I desire that my fineral expenses and debts, if any, be settled, early as convenient after my death.

2. I will, devise and bequeath to my wife Ida Leanore Dowd to have and to hold for her and her heirs and assigns forever all of my property of every kind and nature, both real and personal of *whic* which I may be possessed at the time of my death.

3. I will, devise and bequeath to my five children as follows:

To D. G. Dowd, the sum of $25.00 in cash. To H. F. G. Dowd, the sum of $25.00 in cash. C. A. Dowd, the sum of $25.00 in cash. Jennie K. Dowd, the sum of $25.00 in cash and to Mrs. Mary Gertrude (Dowd) Bartlett, the sum of $25.00 cash.

4. I request that the said Ida Leanore Dowd be appointed executrix of this my last will and testament and that she may be permitted to serve without bond.

In Witness Whereof I have hereunto set my hand this 11th day of November A. D. 1915 in the presence of witnesses called by me to witness the signing of my will.

David F. Dowd"

(Duly signed by three attesting witnesses)

*Estate, supra; In re Crane, supra,* and note 104 A. L. R. 1104; *In re Adler's Estate,* (Wash.) 100 Pac. 1019.)

The heirs have not been hurt by respondent's failure to present the will for probate, though she should have done so. (I. C. A., sec. 15-201.)

The trial court's decree should be affirmed and therefore I dissent.

I am authorized to say that Chief Justice Budge concurs with me in this dissent.