## ANDREW KRAMER, PLAINTIFF IN ERROR, *v.* GEORGE F. SETTLE, DEFENDANT IN ERROR.

EVIDENCE—RES GESTÆ.—In order to entitle declarations to be received in evidence as part of the *res gestæ*, they must be a part of an act, and such as may serve to explain or qualify it, and must have been made while such act was being performed.

RECORD OF MINING CLAIMS—EVIDENCE.—The statute which provides that copies of papers duly filed in the recorder's office, certified by the recorder, shall be received with like effect, in courts, as the original instruments, etc., gives the same effect to such copies as courts would give to the originals when produced, and their execution proved.

RECORD OF MINING CLAIM—NOTICE OF LOCATION OF MINING CLAIM.—If one of several co-locators of a mining claim cause a notice of location of a mining claim to be recorded in the name of himself and his co-locators, in the absence of proof to the contrary, it will be presumed that the written consent of such co-locators had been seen, and a minute made thereof by the recorder, before recording such notice.

REPRESENTATION — WORK DONE ON MINING CLAIM—INSTRUCTION.—The court below was requested to instruct the jury that "work done outside of a mining claim, and with direct reference to the claim, may be considered as work done on the claim." To this the court added the following qualification: "The evidence of such work having been done should be received with great caution, and it should appear clearly that such work was intended for the improvement of such claim, and no other," and gave the instruction so qualified: *Held,* that this was not erroneous.

MINING CLAIM—REPRESENTATION BY WORK.—The failure to perform the work in a mining claim required by law, amounts to an abandonment of the claim, and thereupon it may be occupied by another.

ERROR to the district court of the second judical district, Alturas county.

*J. Brumback,* for the plaintiff in error.

*Prickett & Hasbrouck,* for the defendant in error.

HOLLISTER, J., delivered the opinion. WHITSON, J., concurred. NOGGLE, C. J., dissented.

This is an action brought by the plaintiff in error against the defendant in error to recover the possession of a certain mining claim situated in Alturas county, which it is alleged the defendant unlawfully withheld. The judgment in the court below was for the defendant, to reverse which the plaintiff sued out his writ of error. The plaintiff assigns the following errors, viz.:

1. The court erred in sustaining the objection of respondent's counsel to the question propounded to the witness, John Gray.

2. The court erred in overruling the objection of plaintiff's counsel to the introduction in evidence of the notice of the relocation by the plaintiff, of the mine.

3. The court erred in giving certain qualifications to one of plaintiff's instructions.

4. The court erred in refusing to instruct the jury as to the work to be done in the mining claim as requested by the plaintiff.

5. This is essentially the same as the fourth.

We have given to these various questions the most careful and earnest consideration, and will now proceed to give the result of our deliberations.

The question propounded to the witness Gray is as follows: " Where was the location of the Phœnix ledge as stated to you by Mr. McLaughlin in July 1864, while standing at the mouth of the Idaho tunnel?"

It appears from the record that this mine was located by the plaintiff, together with McLaughlin, and four others, in the preceding March, and that the declaration of McLaughlin was sought to be established upon the ground that it was part of the *res gestœ*. In order to entitle the evidence to be received, the declaration must be part of an act which may serve to explain or qualify it, and made while such act was being performed. If such declaration does not accompany the act, it can not be received. In this case the declaration was made some months after the mine was located, and formed no part of the act of location.

In *Noyes* v. *Ward*, 19 Conn., 250, it was held, where a party, on removing an ancient fence, put down a stone in one of the post-holes, and the next day declared that he had placed it there as a boundary, this declaration, not constituting a part of the act done, was inadmissible in his favor.

And so, in *Johnson* v. *Sherwin*, 3 Gray, 274, the supreme court of Massachusetts held that the reasons given by a wife, on the day after her return to her father's house, for leaving her husband's house are not a part of the *res gestœ*, as con-

nected with and part of the act of leaving her husband's house, and so are not admissible in an action brought by her father against the husband for necessaries supplied to the wife.

The second assignment of errors we might feel disposed to consider good, had not the common law rule of evidence been changed by our statute.

This statute has provided that copies of papers duly filed in the recorder's office, certified to by the recorder, shall be received with like effect in courts, in actions and proceedings, as the original instruments, papers, and notices filed or recorded, could be produced. The phraseology of the statute is somewhat awkward; but it is evidently meant to give the same effect to such copies as courts would give to the originals when produced and their execution proved. It would be absurd to suppose that the legislature intended that the execution of papers thus filed or recorded, must be proved before the certified copies can be received in evidence.

By section 5 of the mining laws of the territory, it is required that all claims shall be recorded in the recorder's office; when this is done, the claims, or, what is the same thing, the notices, may be withdrawn by the claimant after they are recorded, and in process of time they might be lost or destroyed. It would necessarily follow, in such case, that they could not be produced, to be identified and proved, and there could be no proof on the subject if the record did not furnish it. The purpose of the law would therefore be entirely defeated.

This law is framed upon the theory, that no one but the person who executed the notices has any interest in having them recorded. The record therefore furnishes presumptive evidence of their execution, and this presumption can only be overcome by countervailing testimony of a preponderating character, which is always addressed to the judgment and understanding of the judge who tries the case, and when determined by him, upon such evidence, it is not for the appellate court to hold the decision erroneous. Like other questions of evidence, when there is a conflict, it is for the

court (or jury, as the case may be) to decide upon which side it preponderates; and the appellate court, sitting for the review of the evidence, and not for the purpose of weighing it, will not disturb a finding even though it may think the preponderance the other way.

This notice purports to be signed by the plaintiff, Lynch, Nordheimer, McLaughlin, Taggart, and Stevens, claiming, as tenants in common, a mine differing somewhat in its boundaries from the one first claimed and located some months after the location of the premises in controversy by the defendant, and recorded in the recorder's office November 2, 1868, at the request of Nordheimer. The court admitted the copy, notwithstanding the plaintiff denied while on the witness stand having signed it, or authorized any one to sign it for him, or that he had any knowledge of it until a few days before the trial, or that he ever claimed under it.

Section 5 of the act in relation to mines provides that no person shall record claims in the name of any other person, unless he have the written authority of such person or persons, and exhibit the same to the recorder, and make affidavit, to be taken by such recorder, that the written authority is genuine, who shall make a minute of such authority on his records, and file such affidavit in his office.

Without stopping to discuss the question whether one person having an interest in common with another in a mining claim, shall first obtain the written authority or consent of his co-tenant before the notices shall be recorded, it is enough to say, that in the absence of proof that it was not done, we must presume that the recorder had seen and made a minute of such written consent before the notice was recorded.

The third error complained of, is in giving by the court the qualification to the following instruction: "Work done outside of a mining claim, and with direct reference to the claim, may be considered as work done on the claim." To which the court added the following qualification: "The evidence of such work having been done, should be received with great caution, and it should appear clearly that

such work was intended for the improvement of such claim and no other."

We think there was no error in this, for the reason that the qualification only enunciates a general principle of law, which requires that juries should receive evidence with caution, and that it should clearly be made to appear that the question sought to be established by it was thereby proved. It does not go to the extent that the fact should thereby be established conclusively, or that it should be satisfactorily established, beyond a reasonable doubt. It only lays down the proposition that the minds of the jury shall be satisfied by evidence clearly preponderating upon the point.

The court was asked by the plaintiff's counsel to give the following instruction: "It is not necessary that the plaintiff's claim should be good as against the defendant, that he should have his notice of location recorded within ten days after posting the same, or that six hundred dollars' worth of work should be done on his claim within six months after posting his notice. It is sufficient, so far as the defendant's rights are concerned, that the notice was recorded, and the necessary amount of work done before the defendant made his claim. If you find that the plaintiff's notice was recorded, and the required amount of work done before the defendant made his location, the possession of the plaintiff under the law is good. The defendant can not take any advantage of plaintiff's non-compliances with the mining law, within the time limited by such law."

This instruction was given so far as it related to the recording of the notice, and refused as to the remainder. The refusal of the court to give the instruction as asked, and the giving it as qualified, is assigned as the fourth and fifth errors.

This brings us to the consideration of the title which the plaintiff had to the premises, under the mining laws of the territory, and of his right to recover. It appears that the plaintiff was tenant in common with five others in a mine of twelve hundred feet in length, and that it was for the recovery of his portion that the suit was brought.

The instruction as asked, without the qualification, lays

it down as a proposition of law, if the requisite notice is given, and the necessary amount of work done, before the defendant made his location, that the possession was thereby made good. The instruction lays out of view the question whether the plaintiff, after having given the notice and performed the work, may not have abandoned the claim altogether. This he could do, and yet retain no title, though the requisite notice was recorded, and the work done, and the defendant in such case might appropriate the claim to his own use. It assumes that if these prerequisites had been complied with before the defendant laid his claim, the plaintiff could hold it against him, however convincing to the minds of the jury the proofs of abandonment might be. In this view, it was proper for the court to qualify it in the manner it did.

Assuming, however, that it was designed to lay down the law as to what constituted a statutory title to this species of property, we will proceed to consider it in that light. To do so intelligently we have thought it important to refer to so much of the mining law of the territory, as is thought to have any bearing upon the question.

Section 1 provides that any person or persons who may hereafter discover any quartz lead, or lode, shall be entitled to one claim thereon by right of discovery, and one claim each by location.

Section 3 provides the mode in which the claim shall be marked or designated, the name of the locator, the number of feet claimed, and the time it was taken.

Section 4 makes provisions for the location and claim in a body, by two or more persons, by giving a notice, specifying the number of claims located and the name of each person joining in such notice, which shall be in writing, limiting the claim of each to two hundred feet, except when necessary to include a discovery claim. It further provides that persons so joining in one notice shall be considered as tenants in common, and the work required to be performed on a quartz claim, to entitle the locator or his assignees to hold the same as real estate, may be performed on any one

of the claims, so held in common, including the discovery claim.

Section 5 provides that all claims shall be recorded in the recorder's office within ten days from the time of posting the notices thereon, except when the claim is located more than thirty miles from the county-seat, in which case the time shall be extended fifteen days.

Section 6 provides that quartz claims, recorded in accordance with the provisions of the act, shall entitle the person or persons so recording, to hold the same to the use of himself, his heirs and assignees; provided, that within six months from and after the date of recording, he or they shall perform or cause to be performed thereon, work amounting in value to one hundred dollars for each claim of two hundred feet.

By section 7 it is provided, that any person or persons holding quartz claims in pursuance of the provisions of the act, shall renew the notice required in sections 3 and 4, at least once in twelve months, and perform fifty dollars worth of work annually for each claim so located.

We have given these provisions of the act a careful examination, in order to determine whether the estate with which it was the design of the law to invest a claimant, is made to depend upon the performance of the work which is required within the time prescribed, or whether the estate rests in the claimant when the work is done at any time before another lays claim to the mine.

We are constrained to hold that the work to be done must be performed within the time limited by the act, as a condition precedent, before the title can vest under the provisions of section 6, and that it can not be kept good thereafter unless further work be done, as required by section 7. If these requirements are not observed, the claim may be considered abandoned, and another may enter and appropriate it to his own use. The policy of the law on the subject of these mining claims, seems clearly to be that they shall be worked in good faith, and to the extent and within the time required by the law, and that no encouragement shall be given to merely speculative operators.

It is a matter of public notoriety that the enterprise of many who might wish to work mines, is often discouraged by a mere location of another, with but a slight amount of work performed, and more especially, when it is considered that there is a public sentiment among miners that no one shall be permitted to jump such claims with impunity. Under such discouragement, labor and capital are diverted into other channels, and the law relating to mines is in this way made subsidiary, not to the interests of the laborious, enterprising miner, but to those of the idle prospector or the scheming capitalist. It is better to hold that the title to these mines shall be made to depend upon the work to be performed within the statutory limitations, than to put such a construction upon the law as will favor only those who are not laboring diligently and in apt time to develop the riches which lie hidden in the earth.

This view of the law is strengthened by the decision of the supreme court of California in *Dupuy* v. *Williams*, 26 Cal. 309, where it is held, that the failure to perform the amount of work in a mining claim, required by the local mining laws or regulations established and in force in the district where the claim is located, amounts to an abandonment of the claim, and thereupon it may be occupied and appropriated by another.

It is strongly urged as a reason why the court should not put this construction upon the law, that most injurious if not fatal consequences would follow to those who have purchased in these claims, and invested large sums in working them. To enforce this view, it is claimed, that the evidence of the work performed rests in parol, and that in most cases witnesses can not be found to prove it.

By an attentive examination of the act it will be seen that the legislature has carefully guarded against such consequences by providing a mode by which such evidence may be preserved of record by all parties interested, however remote they may be from the original claimant.

Section 8 is full and comprehensive on this point. It provides that any person or persons desiring to preserve and perpetuate testimony as to the sufficiency of the amount of

work done on any claim or claims, to entitle him or them to hold them as real estate according to the provisions of section 6, may take two disinterested persons to view such work, who shall carefully examine the same; immediately after which they shall go before the county recorder, or some magistrate in the county, and take and subscribe an affidavit containing a description of the location of the claim or claims on which work is performed, the character and value of such work, and the date when they received the same, which affidavit shall be filed by the recorder and carefully preserved. Such affidavit or a certified copy of the same under the seal of the county recorder, who has the control of the original affidavit or affidavits, shall in any court in the territory be *prima facie* evidence of the character and amount of labor performed on the claim or claims which are described in the affidavit or affidavits.

This section not only applies to the work performed within the first six months, but embraces all subsequent work expended upon a claim.

It is thus seen that the law places the power of perpetuating the necessary evidence as to the character and amount of work done, not only in the original locator, but also in his heirs and assignees so long as they continue to work the claim. It is true the evidence is but *prima facie*, but it is sufficient for the purpose until the opposite party shall succeed by counter testimony of a preponderating character in overturning it. This, it will be found in all cases, will be a difficult if not an impossible thing to do.

Conceding, however, that section 8 only provides for perpetuating the testimony as to the amount of work done, within the first six months, the apprehended hardship need not follow. It is competent for any one owning a mining claim by location or purchase, when he renews his notice, as provided in section 7, to relocate the claim and put in his proofs as provided in section 8. If he fail to do this, it will be laches of which he can not complain.

All purchasers, if they fear they can not show by parol testimony that the necessary work has been done by their grantors, can go to the recorder's office for such evidence,

. and if they fail to find it, and purchase, they can not be considered *bona fide* purchasers, and must, as a matter of course, take all the risk of having their title defeated.

We are of the opinion there are no errors in the record, and that the judgment of the court below must be affirmed.

Affirmed.

The petition for a rehearing having been filed herein since the judgment of affirmance was given, we have gone carefully over the grounds assumed, and can see but one point on which to modify our opinion then expressed, and that is upon the admissibility of the notice of relocation. We then placed our ruling on that point, on the ground that we could not see that it had any particular bearing in the case. We now put this question entirely upon the statutory provision, in regard to the admissibility of such evidence, which clearly upholds the ruling of the court below.

The petition for a rehearing is therefore denied.