# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37814

| | | |
|---|---|---|
| LESLIE BENZ, | ) | |
| | ) | Boise,  January 2012 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2012 Opinion No. 20 |
| v. | ) | |
| | ) | Filed: January 25, 2012 |
| D. L. EVANS BANK, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Blaine County.  The Hon. Robert J. Elgee, District Judge.

The judgment of the district court is <u>reversed</u> <u>in</u> <u>part</u> and <u>affirmed</u> <u>in</u> <u>part</u>.

Randolph C. Stone; Parsons, Smith, Stone, Loveland & Shirley, LLP; Burley; argued for appellant.

Janet C. Wygle; Loboviski, Wygle, Fallowfield & Ritzau, P.A.; Ketchum; argued for respondent.

---

EISMANN, Justice.

This is an appeal from a judgment holding that a vendee's lien created in connection with a rescinded real estate contract had priority over a deed of trust that the vendor had granted to a bank to secure a loan to the vendor to construct a house on the property; awarding the vendee interest on her payments under the real estate contract; and awarding the vendee attorney fees pursuant to Rule 37(c) of the Idaho Rules of Civil Procedure.  We reverse the part of the judgment holding that the vendee's lien secures accrued interest that the vendee is entitled to recover from the vendor and affirm the remainder of the judgment.

# I.

## Factual Background

On June 7, 2007, Leslie Benz (Buyer) entered into a contract to purchase for the sum of $2,743,500 a townhouse that was to be constructed in Ketchum. The seller under the contract was designated as "Rutherford and/or Assigned to the development LLC 'East Avenue Bluff, LLC,' " which was a limited liability company of which John Rutherford and Stacey (Belton) Rutherford, husband and wife, were the sole members. Ms. Rutherford signed the contract, but it provided that the seller's interest would be assigned to East Avenue Bluff, LLC (Seller) on June 11, 2007, and it was so assigned. Ms. Rutherford was a managing agent of the limited liability company. She was also the listing agent for the real property, and the Rutherfords were part owners of the listing broker, Sun Valley Brokers, LLC.

The contract required Buyer to make three, nonrefundable payments of earnest money, which were to be applied to the purchase price. The first was $100,000 to be paid before June 8, 2007, and the second was $400,000 to be paid on or before June 21, 2007. Those payments were to be delivered to Sun Valley Brokers, LLC, and deposited into its trust account. Buyer made the first payment when she signed the contract and the second payment on June 25, 2007. The contract provided that the first two payments would be released to Seller "upon the simultaneous closing of the acquisition of the Property by Seller from a third party seller." On August 29, 2007, Buyer and Seller signed an addendum stating that those payments are to be released to Seller "non refundable on or before 08/30/2007." The third earnest money payment was $250,000 to be paid to Seller on or before November 1, 2007.

Seller sought a construction loan from the Ketchum branch of D. L. Evans Bank (Bank) in the sum of $2,650,000. Bank's internal documents show that it knew of the contract between Seller and Buyer; of Buyer's payment of earnest money totaling $500,000; and of the third earnest money payment of $250,000 due by November 1, 2007. On August 29, 2007, Seller obtained the construction loan from Bank in the sum of $2,650,000. As security for the loan, Seller executed a deed of trust granting Bank a lien in the property upon which the townhouse was to be constructed and an adjoining lot upon which Seller was to construct another townhouse. Bank recorded the deed of trust on August 30, 2007. Bank also required that the Rutherfords guarantee the loan. On November 13, 2007, Buyer made the final earnest money payment of $250,000.

The construction of Buyer's townhouse was substantially completed and the sale was scheduled to close on February 6, 2009. Just prior to closing, Buyer was informed that the Rutherfords had filed bankruptcy. It was also discovered that Seller had failed to pay in excess of $213,000 in construction expenses. As a result, the closing did not occur as scheduled. Between February 10, 2009, and May 7, 2009, numerous mechanics' and materialmen's liens were filed against the property. Buyer conducted negotiations with Seller until June 2009 in an attempt to see if Buyer could obtain clear title and still purchase the townhouse, but those negotiations were unfruitful. On July 7, 2009, Buyer gave Seller written notice that the contract was rescinded "for failure of consideration, failure to provide marketable and insurable title, and failure to timely close the transaction," and Buyer demanded return of the $750,000 in earnest money that she had paid.

The earnest money was not returned, and on August 12, 2009, Buyer commenced this action against Bank and various lienholders to foreclose her vendee's lien. Default judgments were entered against the holders of the mechanics' and materialmen's liens.

Bank commenced nonjudicial foreclosure proceedings of its deed of trust. Pursuant to the stipulation of the parties, the district court entered an order on February 10, 2010, providing, in part, that the trustee's sale could proceed and that if Bank purchased the property at the sale, it would pay Buyer the amount, if any, that her vendee's lien had priority over Bank's deed of trust. Bank then purchased the property at the sale.

On April 5, 2010, Buyer moved for summary judgment against Bank. The district court heard oral argument on the motion on May 3, 2010, and orally announced that it would grant the motion. On May 18, 2010, Buyer filed a memorandum of costs seeking an award of court costs and an award of attorney fees in the sum of $34,980.00 pursuant to Idaho Code section 12-120(3). On May 27, 2010, Bank filed a motion to disallow the requested attorney fees on the ground that section 12-120(3) did not apply.

On May 19, 2010, the district court entered a written order granting Buyer's motion for summary judgment. In the order, the court also stated that Buyer was entitled to prejudgment interest at the rate of 12% per annum from February 6, 2009, the date the sale transaction was scheduled to close. On May 27, 2010, Bank filed a written objection to the prejudgment interest.

On June 29, 2010, the district court heard the issue of court costs, attorney fees, and prejudgment interest. In an order entered on July 12, 2010, it granted Bank's motion to disallow

3

Buyer's request for an award of attorney fees. The court also held that Buyer's vendee's lien had priority over Bank's deed of trust and that the amount of the vendee's lien was the total of Buyer's payments; interest on those payments from February 6, 2009, the date of Seller's default; and court costs. The court entered judgment in favor of Buyer on July 12, 2010.

On July 12, 2010, Buyer filed a motion for an award of attorney fees in the sum of $16,920 pursuant to Rule 37(c) of the Idaho Rules of Civil Procedure. The basis of the motion was that Bank had denied a request for admission asking it to "[a]dmit that D.L. Evans Bank knew, or should have known, the terms of the purchase and sale contract between East Avenue Bluff, LLC and Leslie Benz, including the payment release provisions and dates, prior to closing on its loan to East Avenue Bluff LLC." After the parties had briefed and argued the motion, the district court entered an order on October 4, 2010, holding that Buyer was entitled to an award of attorney fees for Bank's failure to admit the request for admission and it awarded Buyer attorney fees in the sum of $9,915 as expenses incurred in proving the truth of the matter. On February 8, 2011, the court entered an amended judgment adding the attorney fee award to the prior judgment. Bank timely appealed both judgments.

## II.

**Were There Genuine Issues of Material Fact that Precluded the Granting of
Buyer's Motion for Summary Judgment?**

Bank lists as an issue on appeal, "Were there factual questions appearing in the record or unsupported findings of fact, making entry of the summary judgment improper?" Bank contends that there are material facts that were unsupported by evidence in the record. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). In arguing that summary judgment was improper, Bank points to various statements of the district court that it contends were not supported by any evidence in the record.

The first challenged statement is that the district court allegedly said, "$500,000.00 got paid and applied right to the bank's deed of trust." Actually, the court never made that statement. Apparently, Bank's counsel is used to reading condensed transcripts that have the

4

pages arranged vertically, rather than horizontally. Counsel combined the last five words on page 74 ("It [$500,000] got paid and applied") with the first seven words on page right below it, which was page 76 ("right to the bank's deed of trust."), thus taking the first part of one sentence and the last part of another to create a quotation the district court never said. The complete sentence that begins on page 74 is, "It [$500,000] got paid and applied just as plaintiff's contract called for it to be paid and applied, which was to allow East Avenue Bluff to purchase the lot that the bank looked to for their security." The sentence that begins on page 75 and ends at the top of page 76 is as follows, "I only have to determine that Ms. Benz's lien is prior in time and right to the bank's deed of trust."

Bank challenges several statements reflecting the district court's belief that Seller used Buyer's payments totaling $400,000 to purchase the real property upon which the townhouse was to be constructed. When orally explaining its decision to grant Buyer's motion for summary judgment, the district court made various challenged statements that are highlighted below in context.

> There was *$400,000 used of the – of Ms. Benz's money to purchase the lot*. And I agree with Ms. Wygle that in order for East Avenue Bluff to borrow the money from the bank, *the bank knew how this arrangement between East Avenue Bluff and Ms. Benz was going to work*, and *the bank knew that before East Avenue Bluff would have title to the property and before their deed of trust would attach to the property*, East Avenue Bluff had to close the property – had to close on the sale from the party they were buying it from, and they used – *that was known to the bank that they were – that East Avenue Bluff was using Ms. Benz's money to do that*. That's how and why the bank went along with this deal. *They knew where the money was coming from Ms. Benz and how it was being used and how East Avenue Bluff was using it*.

Bank also challenges the district court's statement in its order granting summary judgment that "Plaintiff's payments were used to acquire or improve the subject real property which fact was known and relied upon by the Bank."

The contract included a provision stating, "Buyer understands that Seller shall use deposit proceeds to secure the Property and to develop it with four townhomes," but Bank is correct that there is nothing in the record indicating that Seller actually used Buyer's earnest money payments to acquire and improve the land upon which the townhouse was to be constructed. However, immaterial issues of fact do not prevent the granting of summary judgment. *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 615, 167 P.3d 748, 752 (2006). What Seller did with the

5

funds paid by Buyer pursuant to the contract has nothing to do with whether Buyer has a vendee's lien.

The next challenged statement by the district court, highlighted in the following quotation, is, "Here *the bank knew of and benefited and expected to benefit from Ms. Benz making that last contractual payment* and had a provision in their loan agreement with East Avenue Bluff as to when and how that payment would be distributed." Bank asserts, "It was uncontroverted that no $250,000.00 payment was made to D.L. Evans Bank." Bank challenges the district court's statement by mischaracterizing what the district court said. The court did not state that Buyer made any payment to Bank, or that Bank ultimately received the entire payment of $250,000. It said that Bank knew of, benefited from, and expected to benefit from that payment.

In opposition to Buyer's motion for summary judgment, Bank filed the affidavit of Bruce Hunsaker, a Bank vice president, who averred that he is custodian of Bank's file, that at all times relevant he was a member of the senior loan committee, and that he had personal knowledge of the proceedings leading up to Bank's approval of the loan. Attached to his affidavit was an internal bank document stating that approval of Bank's loan to Seller was contingent upon the requirement that "[w]hen the additional $250,000 earnest money is received, $182,000 will be applied to the loan." Thus, a portion of the $250,000 payment was to be applied by Seller to its loan from Bank. However, in his deposition Mr. Hunsaker stated that Seller did not make any payments to Bank. Thus, although Bank knew of and expected to benefit from the $250,000 payment, it apparently did not actually benefit from that payment. Nonetheless, whether Seller actually paid the Bank the $182,000 is immaterial. The vendee's lien is not dependent upon any of vendee's funds being paid to a subsequent encumbrancer, such as Bank.

The final challenged statement made by the district court during the hearing was, "They had the contract between East Avenue Bluff, LLC and Ms. Benz." Bank asserts, "There was absolutely nothing in the record before the trial court relating to a copy of the contract being in the possession of D.L. Evans Bank at any time." This statement by Bank's counsel would charitably be described as disingenuous.[1]

---

[1] When asked during oral argument whether this statement was true, Bank's counsel answered, "Kind of." He later stated that he was wrong in stating that the contract was considered by the loan committee in approving the loan.

6

In stating that Bank had the contract, the district court may simply have relied upon Bank's memorandum in opposition to Buyer's motion for summary judgment, wherein Bank's counsel wrote: "Early in the loan approval process, D. L. Evans Bank was made aware of the Benz contract to purchase the property. *They required a copy of the contract and the addendum, which was included in the loan file and considered by the senior loan committee in approving the loan*." (Emphasis added.) Now, Bank's counsel contends that Bank never had a copy of the real estate contract. Nevertheless, there was evidence in the record supporting the district court's statement.

An internal memorandum of Bank that was written by its loan officer and dated July 25, 2007, states: "The purchaser Leslie Benz will have contributed $500,000 non-refundable earnest money at closing of the land purchase. Mrs. Benz will also deposit an additional $250,000 on or before November 1st, 2007 *as indicated in the purchase agreement*." (Emphasis added.) The loan officer would not have known what was shown by the purchase agreement unless he had a copy of it.[2] During his deposition, Mr. Hunsaker was questioned about a statement in a memorandum dated July 31, 2007, prepared a Bank loan analyst who wrote that "[t]he home has been pre sold to Leslie Benz for $2.744MM, who has already committed $500M of non refundable earnest money to the project, with an additional $250M on or before November 1st." Mr. Hunsaker was asked, "How would the loan officer know about the pre-sale?," and he answered, "From the contract." In Mr. Hunsaker's affidavit filed by Bank in opposition to the motion for summary judgment, he stated: "Early in the loan approval process, D.L. Evans Bank was made aware of the Benz contract to purchase the property. *The Senior Loan Committee required a copy of the contract to be included*. It also required confirmation that Ms. Benz's financial condition would allow her to complete the purchase." (Emphasis added.) Thus, at some point prior to making the loan, the Bank's records show that it reviewed the contract, and that fact was confirmed by Mr. Hunsaker.

### III.

### Did the District Court Err in Holding that Buyer's Vendee's Lien
### Had Priority Over Bank's Deed of Trust?

---

[2] When asked during oral argument how the loan officer could know what was "indicated in the purchase agreement" without seeing the purchase agreement, counsel answered, "I don't know."

7

Idaho has a statutory vendee's lien set forth in Idaho Code sections 45-803 and 45-804, which provide as follows:

> [45-803] The liens of vendors and purchasers of real property are valid against every one claiming under the debtor, except a purchaser or encumbrancer in good faith and for value.

> [45-804] One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration.

Bank raises several issues with respect to this statutory lien that we have not previously addressed.

**When is the lien created?** The interpretation of a statute is a question of law over which we exercise free review. *Gooding County v. Wybenga*, 137 Idaho 201, 204, 46 P.3d 18, 21 (2002). It must begin with the literal words of the statute, *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001).

Idaho Code section 45-804 begins, "One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property . . . ." The language indicates that it is the payment to the owner of any part of the purchase price of the real property under an agreement of sale that creates the lien.

Bank argues that *McMahon v. Cooper*, 70 Idaho 139, 212 P.2d 657 (1949), held that a vendee's lien does not come into existence until the vendee filed a lis pendens giving notice of the lien. In that case, the vendee contracted to purchase real property upon which there was a partially constructed house and to pay the balance of the purchase price upon the vendors completing the construction of the home and the construction of a garage according to the specifications in the contract. Before they had substantially completed the contract, the vendors gave notice that the improvements were complete, which under the contract obligated the vendee to promptly pay the balance of the purchase price. The vendee chose instead to give notice he was rescinding the contract and to vacate the property. He then filed an action to recover his payments, the value of improvements he had placed on the property, and to foreclose his vendee's lien. While that action was pending, the vendors listed the property for sale and sold it

8

to a third party, who financed the purchase by a loan from a savings and loan association that was secured by a mortgage.

After holding that the vendee (appellant) was entitled to rescind the contract, this Court stated:

> Appellant is entitled to have the amount found due him declared a lien on the premises and to have such lien foreclosed. Section 45-804, I.C.; 66 C.J. 1497; 55 Am.Jur. 941. The sale to the respondents, Eldredge, and the mortgage to the respondent, Provident Federal Savings and Loan Association, were made after the notice of pendency of suit was filed, and are inferior to appellant's lien.

*Id*. at 147-48, 212 P.2d at 661.

This statement cannot reasonably be interpreted as holding that a vendee's lien does not come into existence until the vendee files a lis pendens. The purpose of a lis pendens is simply to give notice of the pendency of a lawsuit affecting the title or the right to possession of real property. As Idaho Code section 5-505 states:

> In an action affecting the title or the right of possession of real property, the plaintiff at the time of filing the complaint, and the defendant at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterward, may file for record with the recorder of the county in which the property or some part thereof is situated, a notice of the pendency of the action, containing the names of the parties, the object of the action or defense, and a description of the property in that county affected thereby. From the time of filing such notice for record only shall a purchaser or incumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.

A lis pendens does not create a lien. It gives notice of a pending lawsuit to subsequent purchasers or incumbrancers of real property. In *McMahon*, the lis pendens simply gave notice to the subsequent purchaser and mortgagee of the vendee's action to foreclose a vendee's lien so that the purchaser who later bought the real property and the mortgagee who financed that purchase were not a purchaser and encumbrancer in good faith under Idaho Code section 45-803. The lis pendens was significant because there were no other facts indicating that the subsequent purchaser or the mortgagee had actual notice of the vendee's lien. The filing of a lis pendens "is necessary only for the purpose of giving record notice to subsequent purchasers or encumbrancers of the property who have not actual knowledge of the action or of the claim upon

9

which it is based." *Smith v. Faris-Kesl Constr. Co.*, 27 Idaho 407, 427, 150 P. 25, 32 (1915). In this case, Bank had actual notice of the facts creating Buyer's vendee's lien.

Bank also argues that the vendee's lien does not come into existence until there is a judicial determination as to the right to the lien and the amount of the lien. It states:

> The lien is not for all amounts paid by the vendee, only that 'part of the amount paid as he may be entitled to recover back' and it is tied to 'failure of consideration.' This seems to indicate the lien comes into existence, and the priority runs from the date the amount owing is determined following a failure of consideration in a proceeding brought for that purpose.

This Court's opinion in *McMahon* shows that this argument is incorrect. In that case, the trial court rejected the vendee's claim of a vendee's lien and entered a judgment in favor of the vendors for the vendee's breach of contract. It was this Court's opinion on appeal that held that the vendee was entitled to a vendee's lien. We remanded the case for a determination of the amount of that lien, which we held would be a sum calculated by adding the total of the vendee's payments plus the value of the permanent improvements he had made to the property and subtracting the reasonable value of his use of the property during his occupancy, with legal interest on the resulting sum. *McMahon*, 70 Idaho at 148, 212 P.2d at 662.

If the vendee's lien did not come into existence until either the vendee was judicially determined to have the right to rescind the contract or the amount of the vendee's lien was calculated, we could hardly have held that the vendee's lien in *McMahon* had priority over the interests of the purchaser and mortgagee. Those interests in the property were created before our opinion on appeal was issued. It was that opinion which determined that the vendee had a right to rescind the contract and that the vendee had a vendee's lien. We also remanded the case for the district court to calculate the amount of the lien. Thus, we held that the lien existed before any judicial determination of the right to a lien or the amount of the lien.

Bank argues that there is nothing in the record indicating when Seller actually received the funds paid by Buyer. It contends that there is therefore no evidence that Buyer's vendee's lien was created before Bank's deed of trust attached to the property.

The contract provided that Buyer was to make the first two payments of earnest money to Sun Valley Brokers, LLC, for deposit into its trust account and that such company was acting for

both parties as a limited dual agent without assigned agents.[3] The contract provided that both payments were "in part payment of the purchase price"; that both payments were "nonrefundable"; and that Sun Valley Brokers, LLC, was to release the payments to Seller "upon the simultaneous closing of the acquisition of the Property by Seller from a third party seller." "Payment of money to an agent authorized to receive the same is in effect payment to the principal and it is not incumbent upon the payer to trace the money into the hands of the principal in order to have credit for such payment." *Fisher v. Farmers' Co-op. Irrig. Co*., 49 Idaho 343, 350, 288 P. 164, 167 (1930). Thus, as a matter of law, Buyer's payment to Seller's agent on June 7, 2007, of part of the purchase price of the real property when she signed the contract constituted payment to Seller of a part of the purchase price of the real property under Idaho Code section 45-804.[4]

**What is the meaning of "good faith"?** Idaho Code section 45-803 states that a vendee's lien is "valid against every one claiming under the debtor, except a purchaser or encumbrancer in good faith and for value." Bank contends that "good faith" should be construed to mean honesty or the lack of any intention to take unconscientious advantage of another. It also states that its senior loan committee was "unaware of the statutory vendee's lien and its potential ramifications should the vendor default." It argues that there is no evidence that it "made any effort to take an inconscientious advantage of Ms. Benz" or that it had "any information which would lead to the conclusion there would be a failure of consideration." Bank is relying upon the incorrect definition of "good faith."

In 1887, the territorial legislature created statutory vendor's and vendee's liens, which are now codified as Idaho Code sections 45-801 and 45-804. Section 45-801 states,

> One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer.

---

[3] The *Agency Disclosure Brochure* published by the Idaho Real Estate Commission defines a limited dual agent without assigned agents as follows:

> As a Limited Dual Agent, the brokerage and its licensees cannot advocate on behalf of one client over the other. The licensees cannot disclose confidential client information regarding negotiations, terms or factors that motivate the buyer to buy, or the seller to sell, or advocate the interests of one party over those of the other. The brokerage must otherwise promote the non-conflicting interests of both parties, perform the terms of the agency agreements with skill and care, and perform other duties required by law.

[4] The vendee's lien would not have attached to the real property until Seller purchased it.

11

Section 45-804 states,

> One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration.

In 1887, the territorial legislature also enacted what is now codified as Idaho Code section 45-803, which states:

> The liens of vendors and purchasers of real property are valid against every one claiming under the debtor, except a purchaser or encumbrancer in good faith and for value.

Prior to the enactment of that statute, the territorial supreme court had addressed what was good faith with respect to a purchaser of real property. In *Kramer v. Settle*, 1 Idaho 485 (1873), there was a dispute over the ownership of a mining claim. In addressing the assignments of error, the court held that under the mining statutes a mining claim would be abandoned if the owner of the claim did not perform the required amount of annual work on the claim. The appellant argued that such a holding would be injurious to those who purchase mining claims because they would not be able to prove that their grantors had done the required work and therefore still owned the claims. The court rejected that argument because the law permitted the owner of a mining claim to perpetuate testimony as to having done the required work by filing with the county recorder the affidavits of two disinterested persons who had knowledge of the work having been done. A purchaser who failed to check the county records to see if such affidavits had been filed would not be a good faith purchaser. The court stated,

> All purchasers, if they fear they cannot show by parol testimony that the necessary work has been done by their grantors, can go to the recorder's office for such evidence, and if they fail to find it, and purchase, they cannot be considered *bona fide* purchasers, and must, as a matter of course, take all the risk of having their title defeated.

*Id*. at 493-94.

A bona fide purchaser was the same as a good-faith purchaser, as shown by *Leland v. Isenbeck*, 1 Idaho 469 (1873). In *Leland*, the plaintiff brought an action to recover real property that Alexander & Co. had purchased at an execution sale under a void judgment and then conveyed to Isenbeck by a quitclaim deed. The plaintiff lost in the trial court and appealed, and

12

the territorial supreme court reversed. The court stated that "Isenbeck's defense is made to depend entirely upon the question whether the title derived by Alexander & Co. under the sale on execution is good or not, and whether, if not good, he purchased in good faith, and without notice." *Id*. at 470. The court held that Isenbeck was not a good faith purchaser because, as a matter of law, he had notice of the defect in Alexander & Co.'s title because he took title by a quitclaim deed. The court stated: "The defendant purchased with notice of the defects of Alexander & Co's. title, because he took his title by quitclaim deed. In such cases the law presumes that the purchaser had notice of the defects of his grantor's title, and that he purchased at his own risk." *Id*. at 471. The court held that because Isenbeck as a matter of law was not a bona fide purchaser, the trial court had therefore erred in submitting the issue of good faith to the jury. The court stated: "Isenbeck, deriving his title by such a conveyance from Alexander & Co., was not a *bona fide* purchaser without notice. The court should have so instructed the jury, instead of leaving the question of good faith to be determined by them from the proofs in the case." *Id*. at 472.

Neither the opinion in *Kramer* nor the opinion in *Leland* was based upon any statute using the words "good faith." These cases show that the concept of a good-faith purchaser was well understood to be one who acquired real property without actual or constructive notice of another's claim or of any defect in title.

For example, in *Hunter v. Watson*, 12 Cal. 363 (1859), the California Supreme Court addressed the provision in California's Recordation Act of 1850 providing that an unrecorded conveyance of real property "shall be void as against any subsequent purchaser in good faith and for a valuable consideration." *Id*. at 373. It stated that "the true construction is, that the failure of a grantee to record a deed, does not absolutely and without exception avoid the deed as to third persons; for, if it did, it is impossible to give effect to the words '*bona fide* purchaser for a valuable consideration.' " *Id*. It held that a grantee's failure to record the deed only protects good faith purchasers for value. *Id*. at 374. It also noted that in England and in American states that had recording statutes without that limitation, "Courts of Equity engrafted this exception, and held, in numerous cases, that the purchaser of lands, knowing them to have been before sold by the vendor, though the deed was not recorded, was not within the protection of the statute." *Id*.

13

In 1864, the Idaho territorial legislature enacted what is now codified as Idaho Code section 55-812, which provides:

> Every conveyance of real property other than a lease for a term not exceeding one (1) year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded.

We have construed the words "good faith" in that statute to mean actual or constructive knowledge of the prior interest or defect in title. In *Froman v. Madden*, 13 Idaho 138, 88 P. 894 (1907), the defendant purchased a parcel of real property and received a deed to it, but failed to record her deed. About a month later, the plaintiff purchased the same parcel of real property and promptly recorded his deed. A few months later, each party learned of the other's deed. After the defendant had constructed a small house on the property, the plaintiff brought an action to eject her from the land. The jury returned a verdict in favor of the defendant, and the trial court granted the plaintiff's motion for a new trial. The defendant then appealed.

After quoting the statute now codified as section 55-812, this Court stated: "[P]laintiff testifies that he had no knowledge whatever of the sale or conveyance to the defendant and did not have for some two months after his purchase. This constitutes him clearly a purchaser 'in good faith and for a valuable consideration,' and, his conveyance having been first placed of record . . . ." *Id.* at 142, 88 P. at 895. We then explained that for the defendant to prove that the plaintiff was not a good faith purchaser, she must prove that he had either actual or constructive knowledge of her prior interest. We stated:

> Of course, if the defendant should be able to show that the plaintiff had actual knowledge of the sale and conveyance to her prior to his receiving a deed and parting with the purchase price, she would be entitled to recover in this action, or if she could show that he had knowledge of such facts and circumstances as would have led to the discovery of her purchase and conveyance by a reasonably prudent man, she would be entitled to recover, but, in order to recover, she must show that he was not a purchaser in good faith within the meaning of the statute.

*Id.* at 143, 88 P. at 895.

In *Blucher v. Shaw*, 26 Idaho 497, 144 P. 342 (1914), we used the same meaning of good faith when applying the statute to a mortgagee who had no knowledge of a prior, unrecorded deed conveying the mortgaged property. Mary J. (Grimmett) Shaw had homesteaded certain land pursuant to an agreement with her father, J. H. Grimmett, that she would deed it to him

14

upon her receiving title to the land from the government. In compliance with that agreement, she deeded him the property in October 1904, but he did not record the deed until 1913. In November 1904, the daughter married Guy Shaw. About four years later, the plaintiff and her brother made a loan to father, daughter, and daughter's husband secured by mortgages on the real property. At that time, daughter was still the record owner of the property. When the plaintiff brought an action to foreclose her mortgage, father's wife raised as a defense that the land was community property, that she and father were residing on the land when the mortgages were executed, and that she had no knowledge of them. We upheld the judgment foreclosing the mortgages, stating that it "appears that neither the plaintiff nor her agent had any information in regard to said conveyance [the deed from daughter to father], and the evidence clearly shows that the respondent is a mortgagee in good faith." *Id*. at 501, 144 P. at 343.

In *Smith v. Schultz*, 23 Idaho 144, 129 P. 640 (1912), we also held that the validity of a vendor's lien depended upon whether a subsequent purchaser from the vendee had actual or constructive knowledge of the lien. In that case, Smith had given a deed to Schultz as security for a debt. They later agreed that the deed given as security would become an absolute conveyance to Schultz in exchange for Schultz extinguishing Smith's debt, assuming the obligation of an existing mortgage on the property, and giving Smith four promissory notes totaling $5,000. Schultz and a business of which he was president and principal owner later became indebted to a bank, and he deeded the land to the bank, which then deeded it to Collins, the bank president. Smith filed the action to foreclose his vendor's lien against Schultz and Collins. The trial court found that Collins had actual or constructive notice that Schultz still owed part of the purchase price to Smith, and entered judgment foreclosing Smith's vendor's lien. Collins appealed. This Court characterized one of the essential questions presented on appeal as being, "[I]s there sufficient evidence in the record to show that Collins had either actual or constructive notice of Smith's lien at the time of his purchase from the bank, and had the bank either actual or constructive notice of the lien at the time of its purchase from Schultz?" *Id*. at 148, 129 P. at 641. We held that there was sufficient evidence to support the trial court's finding and upheld the foreclosure of the vendor's lien. We described such evidence as follows:

> Schultz testified positively that he notified Collins before the sale that he still owed $5,000. Smith also testified that he told Collins prior to the latter's purchase of the property that he had not been paid in full for the land. Collins does not deny that Schultz advised him that he was still owing something on this

15

land, but says he passed it by lightly as a matter not concerning him. There is also evidence in the record tending to show that Smith was living on the land immediately prior to Collins' purchase of the same, and that when Collins went to look over the place he saw Smith on the land and talked with him.

*Id.* at 151, 129 P. at 642. Although the Court did not cite what is now codified as Idaho Code section 45-803, we presume that it was aware of that statute. Otherwise, the issue of notice would not have been relevant. Collins's notice prevented him from being "a purchaser . . . in good faith" pursuant to Idaho Code section 45-803.

Likewise, in *McMahon v. Cooper*, 70 Idaho 139, 212 P.2d 657 (1949), we held that a subsequent purchaser and mortgagee who had constructive notice of a vendee's lien by reason of a recorded lis pendens took their interests in the real property subject to the vendee's lien. *Id.* at 147-48, 212 P.2d at 661. Constructive notice would have been relevant only if it prevented them from being "a purchaser or encumbrancer in good faith" under Idaho Code section 45-803.

The words "good faith" in sections 45-803 and 55-812 have the same meaning. Both statutes deal with the same subject matter — the circumstances in which a person who acquires an interest in real property takes such interest free of the unrecorded, preexisting interest of another. There is no rational reason why the words "good faith" would not have the same meaning in both statutes. Thus, good faith in section 45-803 means lack of actual or constructive knowledge of the applicable lien.[5]

In this case, it is undisputed that before Bank made the loan to Seller, Bank had actual knowledge that Seller had contracted to sell the real property to Buyer and that she had paid a portion of the purchase price. Mr. Hunsaker stated in his affidavit: "The [Senior Loan] Committee mistakenly believed that the fact that the property had been pre-sold and that Ms. Benz had a substantial investment, significantly decreased the risk factor associated with the loan. They were unaware of the vendee's lien." Bank's lack of awareness of Idaho Code section 45-803 is not a defense to the lien. It knew that Buyer had contracted to purchase the property and had paid Seller a portion of the purchase price. That is sufficient notice that Buyer would have a vendee's lien upon Seller becoming the owner of the property.

---

[5] During oral argument, Bank's counsel conceded that the words "good faith" in both statutes mean the same thing and that in both statutes they both refer to notice.

16

**What amount paid is Buyer entitled to recover back?**  Bank argues that although "it is clear the common law vendee's lien does not apply in Idaho," we should engraft aspects of the common law lien into Idaho Code sections 45-803 and 45-804.  In particular, it asks that we hold that "a vendee's lien is not superior to the claim of the vendor's subsequent creditor to the extent that the vendee continued to make payments to the vendor after learning of the subsequent creditor's rights."  Bank desires us to do so because it contends, "All payments to East Avenue Bluff, LLC were made after Ms. Benz had knowledge of D.L. Evans Bank loan."  Actually, the first two payments totaling $500,000 could hardly have been made with knowledge of a loan that had not yet been made.[6]  Nevertheless, Bank does not point to any wording in either statute that could be interpreted as so limiting the vendee's lien.

Idaho Code section 45-804 creates "*a* special lien" upon the property if the purchaser has paid the owner "any part of the price of the real property," and the amount of such lien is "such part of the amount paid as he may be entitled to recover back."  (Emphasis added.)  The statute does not purport to create a separate lien for each payment of the purchase price.  Likewise, Bank has not presented any reason in law or equity why the statute should be so construed.  If Buyer did not make the third earnest money payment, she would likely forfeit the first two payments.  If she did make the payment and we adopted Bank's proposal, she would likely forfeit the third payment upon Seller's default because it would be subordinate to Bank's interest.

Bank had actual knowledge of the facts that would give rise to Buyer having a vendee's lien upon Seller acquiring the real property.  If Bank desired to protect itself from a vendee's lien, then it could have required that Buyer subordinate her lien as a condition of Bank making the loan, and Buyer could have decided whether to take that risk.  Bank did not do so.  The amount secured by Buyer's vendee's lien is the total of all of her payments plus interest.

## IV.

**Did the District Court Err in Including Prejudgment Interest in the Vendee's Lien?**

---

[6] Assuming Buyer had notice of Bank's intent to make a loan to Seller, Bank's intent to make a loan would not give it any interest in the real property.  *See Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 661, 962 P.2d 1041, 1045 (1998).

In *Sorensen v. Larue*, 47 Idaho 772, 278 P. 1016 (1929), we held that "[w]hen rescission is granted the vendee, he is entitled not only to a return of so much of the purchase money as he has paid, but to interest thereon from time of payment." *Id*. at 778, 278 P. at 1018. We also held that the purchaser may recover "the amount of his necessary outlays, taxes, etc., incurred under the contract, with interest." *Id*. at 778-79, 278 P. at 1018. In *Brooks v. Jensen*, 75 Idaho 201, 270 P.2d 425 (1954), we held that upon rescission of a real estate contract, the purchasers were entitled to recover "the payments on the contract and mortgage, taxes paid, and water assessments. . . and the value of the improvements they made, less the reasonable rental value of the land." *Id*. at 218, 270 P.2d at 437 (citations omitted). In this case, however, the issue is the amount secured by the vendee's lien, not the amount that the vendee would be entitled to recover by from the vendor.

Idaho Code section 45-804 states:

> One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration.

The statute provides that a vendee who "pays to the owner any part of the price of real property" under a purchase contract has a lien independent of possession "for such part of the amount paid as he may be entitled to recover back" if there is a failure of consideration. In context, the words "such part of the amount paid" can only refer to the "part of the price of real property" that the vendee had paid. Thus, under the wording of the statute, the lien only secures repayment of such part of the purchase price paid that the vendee is entitled to recover back.

This Court has previously stated and held that the vendee's lien secures the payment of additional sums. In *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954), we held that the sum secured by the vendee's lien included interest, *id.* at 460, 272 P.2d at 1026, but we did so without any analysis of the wording of the statute. Likewise, in *McMahon v. Cooper*, 70 Idaho 139, 212 P.2d 657 (1949), we held that the vendee's lien included the amount found due to the vendee with interest, *id.* at 147, 212 P.2d at 662, but again without any analysis of the wording of the statute. Buyer relied upon *McMahon* in arguing for prejudgment interest, and Bank argued that it may ask this Court to overrule that decision. We agree with Bank that *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954), and *McMahon v. Cooper*, 70 Idaho 139, 212 P.2d 657 (1949),

must be overruled to the extent that they hold the vendee's lien includes any sum other than the amount of the payments of purchase price the vendee is entitled to recover back.

The wording of the statute simply cannot be construed to hold that the vendee's lien includes anything other than the amount of the payments made under the contract that the vendee is entitled to recover back. The amount that the vendee is entitled to recover back would be the total amount paid on the purchase price less any sum that the vendor is entitled to offset against that amount as damages that the vendor is entitled to recover as a result of the transaction, such as the reasonable rental value of the land while the vendee was in possession. The amount of the vendor's offset, if any, is to be calculated by deducting from the amount of the vendor's damages any additional sums that the vendee is entitled to recover from the vendor as a result of the failure of consideration, such as payments made under the contract in addition to the purchase price, the value of any permanent improvements made by the vendee, and prejudgment interest. In this case, there is no contention that Seller was entitled to offset any sums against the total of the payments made by Buyer as part of the purchase price.

## V.

### Did the District Court Err in Awarding Attorney Fees Pursuant to Rule 37(c)
### for Bank's Failure to Admit?

In her complaint, Buyer alleged:

> Prior to lending the Defendant any money, D.L. Evans Bank required a copy of the Agreement and was informed that the Plaintiff had allowed or would be allowing the release of all of the earnest money totaling $750,000.00. Defendant D.L. Evans Bank has acknowledged in writing that the Plaintiff's vendee's lien is superior to its mortgage lien.

Bank denied that allegation. Therefore, Buyer served upon Bank a request for admission stating as follows:

> REQUEST FOR ADMISSION NO. 2: Admit that D.L. Evans Bank knew, or should have known, the terms of the purchase and sale contract between East Avenue Bluff LLC and Leslie Benz, including the payment release provisions and dates, prior to closing on its loan to East Avenue Bluff LLC.

Bank denied the requested admission.

Buyer later filed a motion seeking an award of attorney fees pursuant to Rule 37(c) of the Idaho Rules of Civil Procedure, which provides:

19

> If a party fails to admit . . . the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

The district court found that the matter requested to be admitted was true, that Bank had no justification under the rule for its failure to admit, and that Buyer was entitled to an award of attorney fees in the sum of $9,915 as reasonable expenses incurred in proving the truth of the matter.

On appeal, Bank first contends that its answer to an interrogatory should be considered as a qualified denial of the request for admission. The interrogatory requested every fact, belief, or opinion upon which Bank failed to admit the request for admission, and Bank's answer was as follows:

> Based upon D.L. Evans Bank's current document review, there is no basis for admitting that D.L. Evans Bank knew or should have known the terms of the Purchase and Sale Contract between East Avenue Bluff, LLC and Leslie Benz, including the payment release provisions and dates prior to closing on its loan to East Avenue Bluff, LLC. The senior loan committee was advised of the fact that a sale existed and some [of] its terms, but the contract itself was not presented to the senior loan committee and the Bank's documentation, to this point of the review, has not established that the contract itself was received by the Bank prior to the closing of the loan. In this regard, the loan officers in the loan are no longer employed by D.L. Evans Bank and D.L. Evans Bank has been attempting, without success, to obtain information from them relating to this transaction.

The interrogatory answer does not constitute a qualified answer to the request for admission.[7] Idaho Rule of Civil Procedure 36(a) provides that a party responding to a request for admission can state "that the party has made reasonable inquiry and that the information

---

[7] An interrogatory answer is not a substitute for properly answering a request for admission. "Any matter admitted under this rule [Rule 36] is conclusively established . . . ." Idaho R. Civ. P. 36(b). Although an interrogatory answer may be admissible in evidence, *Theesen v. Continental Life & Accid. Co.*, 90 Idaho 58, 62, 408 P.2d 177, 179 (1965), it does not conclusively establish the matter stated in the answer.

known or readily obtainable by the party is insufficient to enable the party to admit or deny." Bank did not do that. It simply denied the requested admission.

Bank next questions whether affidavits submitted in connection with a motion for summary judgment are sufficient to prove a matter denied. The rule does not limit the manner of proof, nor does it require that the matter be proved at a trial. It only requires that the requesting party prove the truth of the matter. That proof can come from affidavits and deposition testimony presented in support of or in opposition to a motion for summary judgment.

Finally, Bank states on appeal that it "stands by its denial of Request for Admission No. 2." It argues that there was insufficient evidence in the record in connection with the motion for summary judgment to prove the truth of the matter it denied. According to Bank, "There was absolutely nothing in the record before the trial court for the summary judgment establishing D.L. Evans Bank knew all of the terms of the purchase and sale contract before it closed the loan." It asserts that the record only shows that it knew some of the terms of the contract, not all of them.

Idaho Rule of Civil Procedure 36(a) provides that if the party responding denies the requested admission, "the party shall specify so much of it as is true and qualify or deny the remainder" when good faith so requires. Bank did not qualify its answer to the request for admission. It denied the request. It is too late now to seek to evade responsibility for its denial by contending that it viewed the request as requiring it to admit that it knew every single term in the contract.

The request for admission asked Bank to admit that it "knew, or should have known, the terms of the purchase and sale contract." The material presented in connection with Buyer's motion for summary judgment included the following:

> (a) An internal memorandum of Bank dated July 25, 2007, which states: "The purchaser Leslie Benz will have contributed $500,000 non-refundable earnest money at closing of the land purchase. Mrs. Benz will also deposit an additional $250,000 on or before November 1st, 2007 *as indicated in the purchase agreement*." (Emphasis added.)

> (b) The deposition testimony of Mr. Hunsaker in which he was asked, "How would the loan officer [who authored a memorandum dated July 31, 2007,] know about the pre-sale?," and he answered, "From the contract."

(c) Mr. Hunsaker's affidavit, in which he stated: "Early in the loan approval process, D.L. Evans Bank was made aware of the Benz contract to purchase the property. *The Senior Loan Committee required a copy of the contract to be included*. It also required confirmation that Ms. Benz's financial condition would allow her to complete the purchase." (Emphasis added.) As stated above, Mr. Hunsaker was a member of the senior loan committee and stated that he had "personal knowledge of the proceedings leading to approval of the loan to East Avenue Bluff, LLC."

The district court was entitled to draw reasonable inferences from the facts in the record, and was not required to adopt unreasonable ones. Those facts, and the reasonable inferences drawn from them, provide sufficient proof of the truth of the matter denied by Bank. The district court did not err in awarding Buyer attorney fees pursuant to Rule 37(c). The court went through the requested fees and only awarded fees for services it determined were to prove the truth of the matter denied, and there is no challenge to the amount of fees awarded.

## VI.

### Is Buyer Entitled to an Award of Attorney Fees on Appeal
### Pursuant to Idaho Code Section 12-121?

Buyer seeks an award of attorney fees pursuant to Idaho Code section 12-121. "Attorney fees under § 12-121 will be awarded to the prevailing party on appeal when this Court is left with the abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably or without foundation." *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003). For fees to be awarded under that statute, the entire appeal must have been brought or pursued frivolously, unreasonably, or without foundation. *Id*. In this case, the entire appeal was not frivolous, unreasonable, or without foundation. We agreed with Bank that *McMahon* and *Graves* should be overruled. Therefore, we will not award attorney fees under that statute.

## VII.
### Conclusion

22

We reverse that portion of the judgment awarding prejudgment interest as part of the vendee's lien.  We affirm the remainder of the judgment.[8]  Because both parties have prevailed in part, we do not award costs or attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**

---

[8] Bank did not challenge the district court's judgment including court costs and attorney fees awarded pursuant to Rule 37(c) as part of the lien, undoubtedly because Bank is liable for such sums.